**In the United States District Court
for the District of Kansas**

———————

Case No. 21-cv-02008-TC

———————

PATRICK J. M.,[1]

*Plaintiff*

v.

COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,
KILOLO KIJAKAZI,[2]

*Defendant*

———————

**MEMORANDUM AND ORDER**

Plaintiff Patrick M. claims he is disabled and cannot work. *See* Doc. 9 at 1. He seeks review of a decision of the Commissioner of Social Security denying him Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–433. *Id.* at 1–2. For the following reasons, the Commissioner's final decision is reversed and remanded for further proceedings.

---

[1] Plaintiff is referred to only by first name and initials to protect his privacy. *See, e.g.*, *Joseph M. v. Kijakazi*, No. 22-1065, 2023 WL 2241526, at *5 (D. Kan. Feb. 27, 2023).

[2] Kilolo Kijakazi was sworn in as Acting Commissioner of Social Security on July 9, 2021. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Kijakazi is substituted for the former Commissioner, Andrew M. Saul, as the defendant. See § 42 U.S.C. 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."). No further action is necessary.

# I

## A

**1.** Federal district courts have jurisdiction, upon timely request, to review the Commissioner's final administrative decisions. 42 U.S.C. § 405(g). These cases require a careful review of the record to determine whether "substantial evidence supports the factual findings and whether the [administrative law judge] applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (citing *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). Evidence in support of a finding is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion," and therefore must be "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The ALJ's findings must be grounded in substantial evidence and demonstrate that the ALJ "consider[ed] all relevant medical evidence in making those findings." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citing *Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989)). Consequently, the court will "not reweigh the evidence or try the issues de novo," but it will "meticulously examine the record as a whole . . . to determine if the substantiality test has been met." *Id.* (citations omitted).

**2.** To evaluate an application for disability benefits, the Commissioner uses a five-step sequential analysis. 20 C.F.R. § 404.1520(a)(4); *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Wilson*, 602 F.3d at 1139 (quoting *Lax*, 489 F.3d at 1084). The claimant bears the burden of proof for the first four steps, but the Commissioner does for the fifth. *Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005). In the first three steps, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the alleged onset of the disability, whether the claimant has any severe impairments, and whether the severity of any of those impairments meets or equals the severity of any impairment in the Listing of Impairments found in 20 C.F.R., Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(a)(4)(i)–(iii); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

The fourth and fifth steps of the analysis depend on the claimant's residual functional capacity (RFC), which the Commissioner

assesses after completing the third analytical step. 20 C.F.R. § 404.1520(e). A claimant's RFC is the most the claimant can do despite limitations. *Id.* § 404.1545(a)(1). The Commissioner determines the claimant's RFC based on all relevant evidence in the record. SSR 16-3p, 2017 WL 5180304, at *4–*5 (Oct. 25, 2017).

After analyzing the claimant's RFC, the Commissioner proceeds to the fourth and fifth steps of the analysis. At step four, the Commissioner determines whether the claimant can perform his or her past relevant work in light of his or her RFC. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled. *Id.* At step five, the Commissioner bears the burden to show—in light of the claimant's RFC, age, education, and work experience—that suitable work "exists in significant numbers in the national economy." *Id.* §§ 404.1520(a)(4)(v), 404.1560(c)(2).

**B**

Plaintiff applied for disability insurance benefits in 2018. Doc. 13 at 1; Adm. Rec. at 217–18.[3] The ALJ reviewed Plaintiff's disability claim according to the five-step analysis detailed in 20 C.F.R. § 404.1520. Adm. Rec. at 16. Although the ALJ found Plaintiff's impediments hindered his ability to work, the ALJ determined Plaintiff was not disabled under the Social Security Act because there were significant numbers of jobs in the national economy that he could perform. *Id.* at 30.

The ALJ found at step one that Plaintiff had not been employed in "substantial gainful activity" during the relevant period.[4] Adm. Rec. at 18. At step two, the ALJ found Plaintiff's "disorders of the back;

---

[3] All references to the parties' briefs are to the page numbers assigned by CM/ECF except for factual references to the Administrative Record (Adm. Rec.).

[4] The relevant time period to consider is between December 31, 2016, and December 31, 2017. Adm. Rec. at 22. In order to claim insurance benefits under Title II of the Social Security Act, a plaintiff must show that he was disabled while still insured. SSR 18-01p, 2018 WL 4945639, at *5 (Oct. 2, 2018). Plaintiff received disability insurance benefits beginning December 31, 2016, and was last insured on December 31, 2017. Adm. Rec. at 15, 17, 22. Neither party disputes this is the relevant time period during which to consider Plaintiff's disability status. *See* Doc. 9 at 1, 29; Doc. 13 at 3.

anxiety; and depression" could interfere with his ability to work and would therefore be considered "severe impairments." *Id.* At the third step, the ALJ determined that none of Plaintiff's impairments or combinations of those impairments "met or medically equaled the severity of one of the listed impairments" in the Listing of Impairments. *Id.* at 19.

The ALJ proceeded to assess Plaintiff's RFC and determined Plaintiff could perform sedentary work. Adm. Rec. at 21 (citing 20 C.F.R. § 404.1567(a) (definition of sedentary work)). The ALJ reported that those findings were based on objective medical evidence, Plaintiff's alleged symptoms, and "other evidence in the record." *Id.* at 21–22. And when Plaintiff's claims were not supported by objective medical evidence, the ALJ turned to other evidence on the record, including Plaintiff's statements, treatment notes, nonmedical records, medical opinions, and prior administrative medical findings. *Id.* at 22–28.

The ALJ referred to four expert opinions when analyzing Plaintiff's physical and mental RFC. Adm. Rec. at 27–28. Dr. Sampat and Dr. Hunter—both non-examining, non-treating state agency physicians—said they had insufficient evidence to evaluate Plaintiff's claim. *Id.* at 27, 90, 101. But the ALJ determined these findings were "unpersuasive and inconsistent with the record," and instead referred directly to the medical record to determine Plaintiff's physical limitations. *Id.* at 27–28. The other experts, Dr. Cohen and Dr. Marziano—both state agency psychologists—found Plaintiff was moderately limited in his ability to understand and remember instructions, carry out detailed instructions, and maintain attention and concentration for long periods of time. *Id.* at 91, 104–05. At a minimum, Plaintiff would "be able to understand and remember one to two-step instructions," and have enough attention and concentration "to carry out one to two step tasks for two hours at a time but would likely have difficulty consistently more [sic] complex work." *Id.* at 91–92, 105. They also determined Plaintiff was "[m]arkedly limited" in his ability to interact with the public and likewise had difficulty accepting instructions, responding to criticism, and getting along with coworkers and peers. *Id.* at 92, 105–06. They therefore concluded Plaintiff was unable "to work with the public at any degree of contact" and should have no more than "occasional contact with coworkers and supervisors." *Id.* at 92, 106. Cohen and Marziano also saw "some evidence of symptom exaggeration as well as drug seeking behavior

4

which serve[d] to limit consistency of [Plaintiff's] allegations." *Id.* The ALJ found Cohen and Marziano's opinions "persuasive and consistent with the record." *Id.* at 28.

After considering Plaintiff's statements in light of the evidence, *see* Adm. Rec. at 22–28, the ALJ proceeded with the two-step process of determining Plaintiff's RFC. *See* Adm. Rec. at 22–28. The ALJ's analysis of Plaintiff's mental RFC mostly followed Cohen and Marziano's medical opinions, but there was one discrepancy: Even though Cohen and Marziano considered Plaintiff unable to perform complex tasks, the ALJ also found Plaintiff capable of carrying out "detailed . . . instructions." *Id.* at 21. The ALJ did not explain the basis for that determination.

At step four, the ALJ determined Plaintiff had previously worked as a building maintenance repairer. Adm. Rec. at 29. In light of Plaintiff's RFC and the testimony of a vocational expert, Jennifer Smidt, the ALJ determined Plaintiff could no longer work in that capacity. *Id.* at 16, 29.

At step five, the ALJ found that occupations existed with significant numbers of jobs in the national economy that Plaintiff could have performed. Adm. Rec. at 29. Plaintiff would not have been considered disabled under the Medical-Vocational Guidelines if he could perform all work classified as sedentary. *Id.* at 30. But because the ALJ found Plaintiff had additional limitations, the ALJ asked Smidt what jobs existed in the national economy that a hypothetical individual with Plaintiff's age, education, work experience, and RFC could perform. *Id.* Smidt testified that such a hypothetical person could work as a stuffer, which had 4,200 jobs in the United States; lens inserter, which had 27,000 jobs; and addresser, which had 4,640 jobs. *Id.* Based on that testimony, the ALJ found other work in the national economy existed in significant numbers that Plaintiff was capable of adjusting to. *Id.*

The ALJ therefore concluded Plaintiff was not disabled during the relevant time period, Adm. Rec. at 30, and denied Plaintiff's request for was disability insurance benefits, *see id.* at 16. After exhausting his administrative remedies before the Social Security Administration, Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Doc. 9 at 1, 24.

## II

Plaintiff claims the Commissioner did not meet the step-five burden because the ALJ assessed Plaintiff's mental RFC erroneously, which led the vocational expert, Smidt, to present possible jobs in the national economy that were inappropriate for Plaintiff's limitations. Doc. 9 at 26–27. The ALJ then relied on those inapposite jobs to determine that there were sufficient jobs in the national economy. Doc. 9 at 30–31; Doc. 14 at 2–5. The Commissioner admits the ALJ erred, but claims the error was harmless because there were sufficient remaining jobs to support the ALJ's determination. Doc. 13 at 8. Because that error was not harmless, the ALJ's decision is reversed and remanded for further consideration.

Harmless error analysis may apply on review of an ALJ decision when it is necessary "to supply a missing dispositive finding." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733–34 (10th Cir. 2005). But such a missing finding may only be inferred if, "based on material the ALJ did at least consider (just not properly), [the court] could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1163 (10th Cir. 2012) (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004)). Determining whether a certain number of jobs is significant in the national economy is a dispositive factual finding for the ALJ to decide based on "common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Allen*, 357 F.3d at 1144 (quoting *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992)). If some of those jobs are later found unsuitable for a claimant, the ALJ's decision may only be reviewed under the harmless error standard if the number of remaining jobs is high enough to constitute a significant number. *Id.* at 1145.

The parties agree that the ALJ erred in finding two medical experts' opinions persuasive, but then contradicting those opinions without explanation when evaluating Plaintiff's RFC. Doc. 9 at 26; Doc. 13 at 6. Based on Plaintiff's RFC, age, education, and work experience, Smidt identified three suitable job titles that Plaintiff could perform, of which there were a combined total of 35,840 jobs in the national economy. *Id.* at 30, 56. The ALJ found that total was a significant number of suitable jobs nationwide. *Id.* at 30. But the parties agree that the requirements for two of those jobs are inconsistent with the medical opinions which the ALJ relied on when analyzing

Plaintiff's RFC. Doc. 9 at 26–27; Doc. 13 at 7. The remaining job—lens inserter—had 27,000 positions in the national economy. Adm. Rec. at 30. The ALJ never determined that 27,000 was a significant number of jobs, *see id.*, and the Commissioner has not shown that any reasonable administrative factfinder, following the correct analysis, would necessarily have found that lower number significant.

Misappraisal of Plaintiff's mental RFC was not harmless error. *Contra* Doc. 13 at 7–8. Indeed, other cases have held that even higher numbers of jobs nationwide are not significant as a matter of law when reviewing an ALJ decision for harmless error. *See, e.g.*, *Chavez v. Barnhart*, 126 F. App'x 434, 436–37 (10th Cir. 2005) (finding 49,957 remaining jobs nationally was not enough to find harmless error); *Ferguson v. Berryhill*, No. 16-1348, 2017 WL 2536436, at *6 (D. Kan. June 12, 2017) (30,000 jobs); *Brillhart v. Colvin*, No. 14-1387, 2015 WL 7017439, at *6 (D. Kan. Nov. 10, 2015) (39,000 jobs). The Commissioner therefore failed to show at step five that jobs suited to Plaintiff's limitations existed in significant numbers in the national economy.

The cases the Commissioner cites in support of a finding of harmless error are unpersuasive. The Commissioner first cites *Rogers v. Astrue*, 312 F. App'x 138 (10th Cir. 2009), to support the claim that 27,000 jobs in the national economy is significant. Doc. 13 at 7. But *Rogers* never found that 11,000 suitable jobs in the national economy was sufficient to support an ALJ's determination of nondisability. *Contra id.* It merely found no conflict between a plaintiff's limitation to sedentary work and a vocational expert's testimony that a certain number of positions requiring "medium exertion" could nevertheless be performed with the plaintiff's limitations. *Rogers*, 312 F. App'x at 142. Furthermore, the Tenth Circuit subsequently recognized that *Rogers* did not involve harmless error review, and its holding does not apply in cases—like this one—where harmless error is at issue. *Evans v. Colvin*, 640 F. App'x 731, 735 (10th Cir. 2016); *see also Ferguson*, 2017 WL 2536436, at *6 n.5 (concluding that *Rogers* "did not address the issue of harmless error").

The Commissioner next cites *Lynn v. Colvin*, 637 F. App'x 495, 499 (10th Cir. 2016), in support of the same proposition. Doc. 13 at 7. But even though the Tenth Circuit found that 700 regional jobs and 24,900 national jobs constituted a significant number, it did not find so as a matter of law. *Lynn*, 637 F. App'x at 499. Instead, it merely refused to reverse the ALJ's previous determination that, under the

circumstances, one or both of those numbers were significant. *Id.* This situation is different because the ALJ only found that the combined total of 35,840 jobs constituted a significant number. Adm. Rec. at 30, 56. If the ALJ had considered and found 27,000 jobs a significant number, *Lynn*'s analysis would apply and reversal would not be required. *Allen*, 357 F.3d at 1144 (noting that cases similar to *Lynn* "involved court review of a *finding* of numerical significance *made by the ALJ*; they were not deciding in the first instance that a particular number was significant under the circumstances"). But the ALJ has not yet done so. As a result, this case must be remanded for such a determination. *Id.* at 1145.

Finally, the Commissioner cites *Raymond v. Astrue*, 621 F.3d 1269 (10th Cir. 2009), to claim that an ALJ's denial of benefits may survive on the basis of only one identified occupation. Doc. 13 at 8. The court in *Raymond* sustained an ALJ's denial of benefits on the basis of one identified occupation, even assuming two of three jobs were unsuitable for the plaintiff. 621 F.3d at 1274. But that third occupation had "some 1.34 million . . . jobs available in the national economy," which is well above the lowest number that had previously been found a significant number of jobs in the national economy as a matter of law for purposes of harmless error analysis. *Id.* at 1274 (citing *Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008) (152,000 jobs)). Where some of the jobs the ALJ identified are unsuitable for the plaintiff and the ALJ has not alternatively found the remaining number of jobs to be sufficient, the ALJ's error is only harmless if the remaining number of jobs is large enough that it is obviously sufficient. *Allen*, 357 F.3d at 1144–45 (permitting affirmance of an ALJ's decision only if the remaining number of jobs is, as a matter of law, "so large a number as to conclusively establish the requisite numerical significance"; *compare Raymond*, 621 F.3d at 1274 (finding harmless error when 1.34 million jobs were available) *with Chavez*, 126 F. App'x at 436–37 (holding 49,947 remaining jobs nationally was not enough to find harmless error).[5] The Commissioner has cited no cases indicating 27,000 remaining jobs remaining in the national economy is a large enough number to be significant as a matter of law. The Commissioner's final decision must therefore be reversed.

---

[5] *Chavez* is unpublished and not precedential, *see* D. Kan. R. 7.6(c), but the factual similarity between it and this case and its concordance with *Allen* make its reasoning particularly persuasive.

8

### III

For the foregoing reasons, the Commissioner's final decision is REVERSED and the case is REMANDED for further proceedings consistent with the reasoning above.

It is so ordered.

Date:  April 7, 2023                           s/ Toby Crouse
                                                          Toby Crouse
                                                          United States District Judge